| Massachusetts Port Authority | Policy Reference | HR1.03 |
|---|---|---|
| Human Resources Policies and Procedures Manual | Date Revised | 9/21/00 |

*This policy has been approved by the Massport Board.*

## POLICY ON EMPLOYMENT TERMS AND CONDITIONS

### I. SCOPE AND EFFECTIVENESS

#### A. Scope

All employees, as defined in Section II below, shall be subject to this Policy unless otherwise expressly excluded. None of the provisions of this Policy shall pertain to any employee of the Authority whose terms and conditions of employment are established by a collective bargaining agreement or whose employment with the Authority is considered temporary, nor shall this Policy apply to independent contractors, students or leased workers.

#### B. Effectiveness

The Authority shall review this policy each year at a meeting of its Personnel Committee. In the event that the Authority changes the benefit provided for in Section VII(D) as it is amended from time to time, the change shall not be effective for any ESPM employee employed at the time of the change until twelve months following the date of the change.

### II. DEFINITIONS

**A.** "Days" means working days**.**

**B.** "Employee" means a person duly appointed to a regular non-union employment position or a job share position (provided the job share contract has been signed and approved) with the Authority. Unless otherwise specified, the term "employee" as used in this Policy shall refer to both MSPA and ESPM employees.

**C.** "ESPM" or "Executive, Senior Professional, or Senior Managerial" employee means any employee in a non-union position classified at Level 6 or above in the Authority's classification plan, and includes the position of Executive Director.

**D.** "MSPA" or "Managerial, Supervisory, Professional, or Administrative" employee means any employee in a non-union position classified at Level 5 or below in the Authority's classification plan who has been continuously employed by the Authority for more than six months.

**E.** "Termination" means cessation of an employee's employment at the Authority for any reason, including without limitation, voluntary resignation, voluntary retirement, retirement for superannuation, involuntary termination pursuant to disciplinary procedures, involuntary termination for substandard performance, or involuntary termination due to reduction in staff, reorganization, or as a result of a change in Administration or changing needs. Any involuntary termination of an MSPA employee, or any material reduction in salary or classification for an MSPA employee by reason of demotion, involuntary transfer, unpaid suspension or otherwise, generally will entitle the affected MSPA employee to invoke the Hearing and Grievance Procedure described in Section V(F) as to the relevant personnel action.

**F.** "Hearing and Grievance Procedure" means the procedure outlined in Section V(F) below.

## III. PERFORMANCE APPRAISALS

### A. Annual Performance Appraisals

**1.** Employees are evaluated on performance criteria established by the Executive Director or his/her designee. Annual performance appraisals for each employee generally are conducted on a fiscal year basis as the Executive Director shall direct. Performance appraisals for each employee shall be summarized for each employee in a performance appraisal rating based on the established criteria. The performance appraisal form shall include a rating scale that will measure the employee's overall performance.

**2**. At the request of the Board, performance ratings shall be submitted by the Executive Director to the Board.

**3.** Any Department Head may request from the Director of Human Resources an extension of up to six months for the submission of a performance appraisal for a particular employee, if, in the Department Head's opinion, additional time is required to evaluate the performance of such employee. If the Director of Human Resources grants such a request, the Department Head shall promptly notify the affected employee of the performance appraisal schedule to be followed. The Executive Director shall have the same option with respect to employees who report directly to him/her.

### B. Salary Review

An annual salary review for employees shall be conducted as the Executive Director shall direct. As part of the budget cycle of each fiscal year, the Executive Director shall recommend to the Board a merit percentage increase, if

appropriate.  If a merit percentage increase is not rejected by the Board, then merit increases, as determined by Department Heads based on performance appraisal results, shall become effective on July 1 of each year.  Employees must receive a rating at least equivalent to a satisfactory rating on their annual performance appraisals in order to be eligible for any merit increase adjustment.

## IV.  EMPLOYMENT STATUS

### A.  MSPA Employees

1.   For the first six months of their employment, employees in non-union positions classified at Level 5 or below in the Authority's classification plan shall be considered "at-will" employees of the Authority.  Any MSPA employee who has been continuously employed by the Authority for more than six months shall be considered, for purposes of this Policy, an employee of the Authority with a continuing employment status that will terminate involuntarily only upon good faith compliance with the terms and conditions of this Policy.  After the first six months of employment, an MSPA employee may not be terminated involuntarily except for "just cause" (as that term is defined in Section V), a statement of which shall be provided at the time notice of termination is given.  An MSPA employee employed for more than six months shall be entitled to invoke the Hearing and Grievance Procedure to review the causes stated for any involuntary termination.

2.   Procedures for termination of an MSPA employee are outlined in Section V below.  Any MSPA employee who is terminated from employment, either voluntarily or involuntarily, shall be required to return all Authority property in his or her possession, including the items listed on the final termination form, prior to release of any termination benefit to which the employee would otherwise be entitled pursuant to this Policy or any other policy of the Authority.

### B.  ESPM Employees

1.   Employment of an ESPM employee is on an "at-will" basis.

2.    Guidelines for termination of an ESPM employee are outlined in Sections VI and VII below.  Any ESPM employee who is terminated from employment, either voluntarily or involuntarily, shall be required to return all Authority property in his or her possession, including the items listed on the final termination form, prior to release of any termination benefit to which the employee would otherwise be entitled pursuant to this Policy or any other policy of the Authority.

### C.  Management Discretion

Nothing in this Policy shall be construed to limit or alter the sole discretion of the Authority, acting through its Executive Director or his/her designee, to discipline, demote, transfer, suspend, terminate or take any other personnel action as to any employee for any reason deemed by management to be appropriate from time to time, and under any terms and conditions as to such action that the Authority, acting through its Executive Director or his/her designee, chooses to impose, except that MSPA employees may be involuntarily terminated, or subjected to a material reduction in salary or classification, only for "just cause" (as that term is defined in this Policy) in accordance with Sections II (E) and V.

## V.  TERMINATION: MSPA Employees

For purposes of this Policy, the involuntary termination of an MSPA's employment for "just cause" shall mean involuntary termination for one or more of the reasons set forth  in Sections V(B)-(E) below.  "Just cause" for involuntary termination as defined in this     Section V will also constitute "just cause" for any material reduction in an MSPA employee's salary or classification.

### A.  Voluntary Resignation/Retirement

The Authority shall request a minimum of two weeks written notice of any such resignation or retirement.

### B.  Reorganization/Layoff

1.   An MSPA employee is subject to involuntary termination due to layoff and/or departmental reorganization. Just cause for such layoff and/or departmental reorganization shall include insufficient work as determined by the Department Head or adverse financial conditions affecting part of the Authority, the Authority as a whole, or any particular unit of the Authority.

2.   An MSPA employee subject to a personnel action described in Section V(B)(1) above shall be entitled to reinstatement if the particular position from which he/she is involuntarily terminated, as described in the previous paragraph, is filled within one year of the date of layoff or termination, provided that the employee notifies the Authority in writing of an interest in reinstatement within 30 days of such layoff or involuntary termination.

### C.  Disciplinary Termination

1.   The Authority, acting through the Executive Director or his/her designee, typically shall impose a progressive disciplinary process when an MSPA employee has a problem on the job which may lend itself to rectification

through such process.  Supervisors and managers are authorized to issue both oral and written warnings and/or any other form of progressive discipline up to and including termination and may impose such discipline for infractions of policies and/or procedures, or behaviors disruptive to the workplace and/or productivity, which they deem to merit such discipline. Any MSPA employee who receives a warning generally will have the opportunity, if he/she so requests, to meet with his/her supervisor to discuss the issue.  The progressive disciplinary process described in this paragraph may, at the discretion of the Authority, acting through its Executive Director or his/her designee, include, among other things, oral warning(s), written warning(s), suspension and/or termination, not necessarily in that order.  The severity of the infraction and the employee's employment record, among other things, may determine the degree of disciplinary action taken by management.  In addition, at management's sole discretion, serious disciplinary sanctions, up to and including termination, may be imposed in lieu of any step in the progressive discipline process.  Any involuntary termination implemented in accordance with this Section V(C)(1) shall constitute termination for just cause.

2. In the case of infractions of policies and/or procedures, or behaviors disruptive to the workplace and/or productivity, which the Authority, acting through its Executive Director or his/her designee, deems in its sole discretion to be serious, including but not limited to infractions or behaviors involving the MSPA employee's honesty, abusive or harassing behavior toward other employees or the public, and/or workplace substance abuse, the Authority, acting through the Executive Director or his/her designee, may discipline or terminate the MSPA employee without first imposing progressive discipline. Any involuntary termination implemented in accordance with this Section V(C)(2) shall constitute termination for just cause.

**D. Unsatisfactory Performance**

1. The MSPA employee may be put on probation for a three month period for unsatisfactory performance at any time by his/her Department Head.  No MSPA employee may be terminated as a result of poor performance without having received notice and an opportunity to cure as described herein.  Termination for poor performance (as determined at the discretion of the Authority, acting through its Executive Director or his/her designee), after said notice and opportunity to cure has been completed, shall constitute termination for just cause.  Notice for these purposes shall consist of:

   a. a written letter to the employee from the Department Head; or

b.   any rating on an annual performance appraisal that reflects a less than satisfactory review, as identified on the performance appraisal form.

Such notice shall contain specific reference to the defects in the MSPA employee's performance, and a statement of the expected standards of performance.  The MSPA employee shall have the opportunity to meet with his/her manager and the Department Head to discuss proposed remedies.  If appropriate, the MSPA employee may be referred to the Director of Human Resources for additional resources.

2.   If the MSPA employee's performance has not reached a satisfactory level at the end of the probationary period, the Department Head may terminate the MSPA employee.  Notwithstanding anything to the contrary in Section V(D)(1), if the MSPA employee's performance does not show reasonably sufficient improvement (as determined at the discretion of the Authority, acting through its Executive Director or his/her designee) during the probationary period, the Department Head may terminate the MSPA employee at any time after the first four weeks of the probationary period have elapsed, provided that the Department Head receives prior written approval of such termination decision from the Director of Human Resources.  At his/her discretion, the Department Head may extend the probationary period. This extension shall be no longer than three months. If the employee has not achieved satisfactory performance by the end of the extension, the employee may be terminated.

**E.  Probationary Transfer**

1.   There may be circumstances where the Authority's business needs may best be served by transferring to a new position an employee who is performing poorly in his/her current position and who would otherwise be subject to probation in that position.  In such cases, the Director of Human Resources, with the approval of the affected Department Head(s), may authorize the probationary transfer of an employee to a new position in the Authority.  In such cases, the employee will be placed on three months' probation, commencing on the date of the transfer.  The employee will, prior to the transfer, receive written notice of the transfer, which shall describe, at a minimum, the length of the employee's probationary period, the performance deficiencies which form the basis for the probation and transfer and the job title and job description of the position to which the employee is being transferred.

2.   Following the transfer, the employee generally will meet with his/her new supervisor, who shall review with the employee the job description for the new position and who shall communicate the supervisor's work performance expectations.  The employee and the new supervisor typically

will meet during the employee's first month in the new position to review the employee's job performance.

3.    In the event the employee's new Department Head determines at any time after the first four weeks of the probationary period have elapsed that the employee is unable or unwilling to perform the duties of his/her new position, the employee may, with the approval of the Director of Human Resources, be immediately terminated by the Department Head for poor performance.  At the end of the probationary period described in Section V(E)(1) above, the Department Head may, with the approval of the Director of Human Resources, extend the probationary period for up to three months.  If the employee has not achieved satisfactory performance by the end of the extended probationary period, the employee may be terminated for poor performance.  Termination of an MSPA employee in accordance with this paragraph shall constitute termination for just cause.

**F. Hearing and Grievance Procedure**

This Hearing and Grievance Procedure may be invoked by any MSPA employee discharged pursuant to Sections V(B), (C), (D) or (E) above, as well as by any MSPA employee entitled to invoke the same pursuant to Section II(E) above. Employees eligible to invoke this procedure MUST do so if they wish to challenge any personnel decision to which the Hearing and Grievance Procedure applies.

1. Hearing Process

   Any MSPA employee upon whom the Authority, acting through its Executive Director or his/her designee, is considering imposing a personnel action subject to this Hearing and Grievance Procedure generally will receive notice of that fact and an opportunity to respond to management's basis for considering such action before the relevant personnel action is implemented.

2. Grievance Procedure

   a. During the grievance procedure set forth below, an MSPA employee shall be considered terminated and remain off the payroll, or shall otherwise remain subject to the terms of the challenged personnel decision, unless and until the challenged decision is overturned through this grievance procedure. If an MSPA employee's appeal is successful and the relevant decision is overturned, retroactive pay may be awarded, as appropriate.

   b. The following steps shall constitute the grievance procedure:

   STEP 1:
   Within five days of receipt of the statement of reasons for the relevant personnel decision, the MSPA employee must submit to his/her Department Head written objections to that statement. The Department Head may, at his/her discretion, reverse the decision by expressly withdrawing the statement of reasons for such decision.

   STEP 2:
   If the statement of reasons is not withdrawn within five days of the MSPA employee's objection to the Department Head, the MSPA employee shall have five further days to request that a hearing be held. Said hearing shall be conducted by the Director of Labor Relations, or such other suitable employee that the Executive Director may designate, within five days of the request for a hearing, and the purpose of said hearing shall be to inquire into whether the statement of reasons has support in the underlying factual circumstances and whether those facts constitute "just cause" for

termination under the terms of this Policy, or constitute "just cause" under this Policy for a material reduction in salary or classification to which the terms of this Hearing and Grievance Procedure apply, as appropriate.  Any allegation of unlawful discrimination in employment opportunity raised during the grievance procedure shall, in addition to being considered at the various procedural steps during which it is raised, be referred to the Director of Compliance or his/her designee for investigation.  The hearing shall be suspended until such time as the Director of Compliance's, or his/her designee's, investigation has been concluded.  At the conclusion of the investigation, the Director of Compliance or his/her designee shall report the findings to the person conducting the hearing ("hearing officer").

Any MSPA employee making such an allegation of discrimination with respect to his/her termination or other personnel action subject to this Hearing and Grievance Procedure shall have the right to have the Director of Compliance or his/her designee present at the hearing.  Any report of the Director of Compliance or his/her designee hereunder shall not be conclusive but shall be entitled to due consideration.

STEP 3:
If the statement of reasons is not withdrawn within five days of the issuance of findings by the hearing officer, the MSPA employee shall have five further days to appeal in writing to the Executive Director. The Executive Director or, if he/she so designates, the Deputy Executive Director, shall make a decision on any such appeal and said decision shall be final and without further recourse except as provided in Step 4.

STEP 4:
If the MSPA employee claims that the relevant personnel decision was a violation of his/her right to free speech or freedom of association protected by the First and Fourteenth Amendments of the United States Constitution as part of the Step 1 written objections and presents evidence supporting such claim at the hearing, the MSPA employee shall be entitled within five days of receiving the decision of the Executive Director, or the Deputy Executive Director, as the case may be, adverse to the employee to commence arbitration of that claim with the American Arbitration Association.  If the MSPA employee prevails, all costs of arbitration (exclusive of attorney's fees) shall be borne by the Authority.  If the Authority prevails, fifty percent of the arbitration costs (exclusive of attorney's fees) will be borne by the MSPA employee.  The burden of persuasion shall be on the MSPA employee to establish that the exercise of constitutionally protected rights addressed by this paragraph (Step 4) was the primary motive for the relevant personnel decision.

3.    The  Hearing and Grievance Procedure involves the employment relationship between the Authority and the individual employee.

Therefore, the opportunity to meet described in the above paragraphs (with the exception of Step 4) is accorded to the MSPA employee, not to legal counsel or any other representative of the MSPA employee. Should the MSPA employee request the presence of legal counsel or other representation, such presence may be allowed on the condition that the individual observe but not participate in the meeting between the Authority and its employee.  If the MSPA employee is accompanied by legal counsel, the Chief Legal Counsel, or his/her designee,  may serve as the legal advisor for the Authority in the meeting.  Notwithstanding the foregoing, to the extent that anything in this subsection V(F)(3) is inconsistent with governing law, said law shall apply.

## G. Severance Allowance

MSPA employees may be considered for severance allowance if, in the sole discretion of the Authority, acting through the Executive Director or Deputy Executive Director, extenuating circumstances warrant such consideration. MSPA employees with less than sixty (60) months service to whom the Authority, acting through its Executive Director or his/her designee, in its discretion grants a severance allowance shall be paid said severance in accordance with the severance formula established by vote of the Authority on June 10, 1976, as amended on June 18, 1987.

## VI.  TERMINATION: ESPM Employees

### A.  Voluntary Resignation/Retirement

The Authority shall request a minimum of two weeks written notice of any such resignation or retirement.

### B.  Involuntary Termination

ESPM employees are "at-will" employees of the Authority.  As such, they may be terminated at any time for any reason, with or without notice.  ESPM employees terminated for reasons other than "cause", as that term is defined in Section VII below, shall be provided with severance in accordance with Section VII.

## VII.  SEVERANCE: ESPM Employees

ESPM employees terminated for any of the reasons described in Sections VII(A), (B) or (C) below will be deemed to have been terminated for "cause" and will not be entitled to severance.  ESPM employees terminated for reasons other than "cause" will be provided with severance in accordance with Section VII(D).

**A.  Disciplinary Termination**

1.    The Authority, acting through the Executive Director or his/her designee, typically shall impose a progressive disciplinary process when an ESPM employee has a problem on the job which may lend itself to rectification through such process.  Supervisors and managers are authorized to issue both oral and written warnings and/or any other form of progressive discipline up to and including termination and may issue such discipline for those infractions of policies and/or procedures, and/or behaviors disruptive to the workplace and/or productivity, which they deem to merit such discipline.  The infractions and/or behaviors described in the preceding sentence shall constitute grounds for termination for cause. Any ESPM employee who receives a warning generally will have the opportunity, if he/she so requests, to meet with his/her supervisor to discuss the issue.  The progressive disciplinary process described in this paragraph may, at the discretion of the Authority, acting through its Executive Director or his/her designee, include, among other things, oral warning(s), written warning(s), suspension and/or termination, not necessarily in that order.  The severity of the infraction and the employee's employment record, among other things, may determine the degree of disciplinary action taken by management.  In addition, at the sole discretion of the Authority, acting through its Executive Director or his/her designee, serious disciplinary sanctions, up to and including termination, may be imposed in lieu of any step in the progressive discipline process.

2.    In the case of infractions or behaviors constituting cause pursuant to Section VII(A)(1) above which the Authority, acting through its Executive Director or his/her designee, deems in its sole discretion to be serious, including but not limited to infractions or behaviors involving the ESPM employee's honesty, abusive or harassing behavior toward other employees or the public and/or workplace substance abuse, the Authority, acting through the Executive Director or his/her designee, may discipline or terminate the ESPM employee without first imposing progressive discipline.

3.    In the case of a demotion, involuntary transfer, reduction in pay, or involuntary termination, the ESPM employee typically will receive reasonable notice that (1) provides an explanation of why discipline is being contemplated; (2) explains the possible disciplinary action that may be taken; and (3) provides a reasonable amount of time for the ESPM employee to prepare to respond. The ESPM employee generally will thereafter have an opportunity to meet with his or her Department Head (or the Department Head's designee) and the Director of Human Resources to discuss the action being contemplated.  Under appropriate circumstances, immediate suspension without pay, demotion or

termination may be required; provided, the notice and opportunity to be heard discussed above generally will be provided subsequently in due course.

4.    The disciplinary process involves the employment relationship between the Authority and the individual employee.  Therefore, the opportunity to meet described in the previous paragraph is accorded to the ESPM employee, not to legal counsel or any other representative of the ESPM employee.  Should the ESPM employee request the presence of legal counsel or other representation, such presence may be allowed on the condition that the individual observe but not participate in the meeting between the Authority and its employee.  If the ESPM employee is accompanied by legal counsel, the Chief Legal Counsel, or his/her designee, may serve as the legal advisor for the Authority in the meeting. Notwithstanding the foregoing, to the extent that anything in this subsection VII(A)(4) is inconsistent with governing law, said law shall apply.

## B.  Unsatisfactory Performance

1.    The ESPM employee may be put on probation for any period that the Authority, acting through its Executive Director or his/her designee, deems appropriate, up to a three month period, for unsatisfactory performance at any time by his/her Department Head.  ESPM employees generally will not be terminated as a result of poor performance without having received notice and an opportunity to cure during a probationary period. Notice of the probationary period typically will consist of:

   a.   a written letter to the employee from the Department Head; or

   b   any rating on an annual performance appraisal that reflects a less than satisfactory review, as identified on the performance appraisal form.

   Such notice normally will contain specific reference to the defects in the ESPM employee's performance, and a statement of the expected standards of performance.  The ESPM employee typically will have the opportunity to meet with his/her manager and the Department Head to discuss proposed remedies.  If appropriate, the ESPM employee may be referred to the Director of Human Resources for additional resources.

2.    If the ESPM employee's performance has not reached a satisfactory level at the end of the probationary period, the Department Head may terminate the ESPM employee.  If the ESPM employee's performance does not show reasonably sufficient improvement during the probationary period, the Department Head may terminate the ESPM employee during the probationary period, provided that the Department

Head receives prior written approval of such termination decision from the Director of Human Resources.  At his/her discretion, the Department Head may extend the probationary period. This extension shall be no longer than three months. If the employee has not achieved satisfactory performance by the end of the extension, the employee may be terminated.

**C.  Probationary Transfer**

1.    There may be circumstances where the Authority's business needs may best be served by transferring to a new position an employee who is performing poorly in his/her current position and who would otherwise be subject to probation.  In such cases, the Director of Human Resources, with the approval of the affected Department Head(s), may authorize the probationary transfer of an employee to a new position in the Authority. In such cases, the employee will be placed on probation, commencing on the date of the transfer.  The employee will, prior to the transfer, receive written notice of the transfer, which typically will describe, at a minimum, the length of the employee's probationary period, the performance deficiencies which form the basis for the probation and transfer and the job title and job description of the position to which the employee is being transferred.

2.    Following the transfer, the employee typically will meet with his/her new supervisor, who shall review with the employee the job description for the new position and who shall communicate the supervisor's work performance expectations.  The employee and the new supervisor generally will meet during the employee's first month in the new position (assuming the employee remains employed at that time) to review the employee's job performance.

3.    In the event the employee's new Department Head determines at any time during the course of or at the conclusion of the probationary period that the employee is unable or unwilling to perform the duties of his/her new position, the employee may, with the approval of the Director of Human Resources, be immediately terminated by the Department Head for poor performance.  At the end of the probationary period described in Section VII(C)(1) above, the Department Head may, with the approval of the Director of Human Resources, extend the probationary period for up to three months.  If the employee has not achieved satisfactory performance by the end of the extended probationary period, the employee may be terminated for poor performance.

**D. Severance Policy**

1.   The severance policy applies to all involuntary ESPM employee terminations other than terminations for "cause" as described in Section VII above; provided, that it shall not apply to job share employees and employees working a part-time work schedule who are terminated after they have been offered a comparable position with a full-time schedule and have rejected said offer.

2.   Any ESPM employee having completed one year of satisfactory service at the time of an involuntary termination (other than a termination for "cause") shall receive eight weeks base salary severance allowance in accordance with Section VII(D)(1) above.  An additional two weeks base salary shall be awarded for each additional year of service at Massport, for a combined total not to exceed 26 weeks.  In addition, at the sole discretion of the Authority, acting through its Executive Director or his/her designee, and without any obligation to do so, the Authority may, acting through the Executive Director or Deputy Executive Director, pay to any ESPM who has completed at least five years of service an additional severance allowance.  The amount of such additional allowance shall not exceed three months' base salary.  In granting such discretionary severance allowance, the Authority, acting through its Executive Director or his/her designee, shall consider the employee's length of service and job performance. The severance policy as discussed above shall, for ESPM employees, replace all previous severance allowance policies, including without limitation the severance allowance policy established by vote of the Authority on June 10, 1976, as amended June 18, 1987.