UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LARRY PIONE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE MASSACHUSETTS PORT )<br>AUTHORTY, )<br>)<br>Defendant. )<br>) | C.A. No. 04-12177-MLW |

**DEFENDANT MASSACHUSETTS PORT AUTHORITY'S
MOTION FOR SUMMARY JUDGMENT, STATEMENT OF UNDISPUTED FACTS,
AND REQUEST FOR ORAL ARGUMENT**

William V. Hoch, Esq.
BBO #564465
Senior Employment Counsel
Massachusetts Port Authority
One Harborside Drive - Legal
East Boston, Massachusetts   02128
(617) 568-3142

June 9, 2006

Now comes the Massachusetts Port Authority ("Massport" or the "Authority") and respectfully requests that this Court grant it summary judgment in this matter for the following reasons:

1. Plaintiff currently has three active claims against Massport: interference with his exercise of rights under the Family and Medical Leave Act ("FMLA"), breach of contract, and defamation. Plaintiff's claim for wrongful discharge was dismissed by the Court and plaintiff has indicated that he will withdraw his claims for intentional and negligent infliction of emotional distress.[1]

2. The FMLA, breach of contract, and defamation claims all should be dismissed because, after a review of the pleadings, depositions, and affidavits, the Court will see that there are no genuine issues of material fact to be determined and Massport is entitled to judgment as a matter of law.

3. There are three grounds sufficient to dismiss Plaintiff's FMLA interference claim. First, the claim should be dismissed because Plaintiff waited longer than two years to file his claim and cannot demonstrate that Massport willfully violated the FMLA. Even if Plaintiff could overcome the fact that his FMLA claim is time barred, Massport had no obligation to reinstate him because he was not able to return to work after twelve weeks. Finally, Plaintiff cannot demonstrate that Massport illegally interfered with his rights under the FMLA.

4. Plaintiff's defamation claim must be dismissed because Plaintiff has not demonstrated sufficient facts to overcome Massport's employer's privilege to disseminate necessary

---

[1] Counsel for both parties have discussed this matter on the telephone and in e-mail exchanges. Plaintiff's counsel has stated that Mr. Pione will withdraw his claims for intentional and negligent infliction of emotional distress. Because of this agreement, Massport is not presenting arguments outlining why these claims are barred by the Worker's Compensation pre-emption and must be dismissed as a matter of law. To the extent that Plaintiff fails to

information concerning Plaintiff in the course of evaluating Plaintiff's fitness to remain employed at Massport. In addition, his defamation claim should be dismissed because he cannot demonstrate that Massport was negligent in making any statements about him.

5.     Plaintiff's breach of contract claim must be dismissed because Massport's Policy on Employment Terms and Conditions ("Policy") did not create a contract with Plaintiff; and, if it did, Massport fulfilled the terms of the contract.

6.     In support of this Motion for Summary Judgment, Massport attached three documents. First, Massport attached an Affidavit of William Hoch, which contains selections of deposition testimony from Mr. Pione, selected exhibits from the Pione deposition, and a decision from the Massachusetts Commission Against Discrimination ("MCAD") in a related case. Second, Massport attached an Affidavit of William Hoch, filed in the related MCAD case, which contains selections from multiple depositions and documents exchanged in discovery before the MCAD. Finally, Massport attached an affidavit from Marie H. Bowen. These documents, in conjunction with Massport's Memorandum of Law in Support of Motion for Summary Judgment, present the facts and law supporting this Motion For Summary Judgment.

## **CONCLUSION**

For the above stated reasons and the reasons set forth in the Authority's Memorandum in Support of Its Motion for Summary Judgment, the defendant requests that the Court dismiss Plaintiff's remaining claims.

---

withdraw these claims, Massport reserves the right to file a Motion for Summary Judgment on the two emotional distress claims.

## **RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

**I.      Facts Pertaining To Plaintiff's Employment With Massport.**

1.      Massport engaged Plaintiff as a consultant in 1995 and hired him as a Special Financial Project Manager in 1997.  Hoch Aff. (MCAD) Ex. A, pp. 11, 14-15.

2.      The position of Special Financial Project Manager was created for Plaintiff and, was classified as a level 6 position.  *Id.* at pp. 11, 22; Hoch Aff. (USDC) Ex. A, p. 132.

3.      At the time Massport engaged Plaintiff as a consultant and hired him as an employee, Massport's Chief Financial Officer was Plaintiff's cousin.  Hoch Aff. (MCAD) Ex A, pp. 14-15.

4.      When hired, Plaintiff held an associate's degree in hospitality, had taken some basic accounting classes, and had learned accounting through various jobs.  *Id.* at pp. 8-9.

5.      After Massport terminated Plaintiff in 2001, it did not fill his position.  *Id.* at. p. 141; Ex. D p. 20.

**II.     The October 16, 2001 Incident, Investigation, and Plaintiff's Termination**

5.      On October 16, 2001, at approximately 6:50 a.m., Massport Internal Audit Manager Phyllis Daigle was walking to her office and observed Plaintiff using a key to enter Payroll Supervisor Anita Jansky's locked office.  Hoch Aff. (MCAD) Ex C pp. 14, 18.

6.      Ms. Jansky testified that she kept her office locked at night.  Hoch Aff. (MCAD), Ex. D p. 15.

7.      Ms. Daigle then clearly saw Plaintiff stand behind Ms. Jansky's desk and examine papers on her desk.  *Id.* at pp. 15-16, 17-18, 39-40.

8.      Moments later, Ms. Daigle was walking from her office to the kitchen and saw Plaintiff at the Payroll Department copy machine.  *Id.* at p. 14.

3

9. On her way from the kitchen to her office, she again saw Plaintiff and he was coming out of Ms. Jansky's office carrying papers. *Id.* at C p. 19.

10. Ms. Daigle asked Plaintiff what he was doing. *Id.* He said he was getting documents from the printer and asked if there was a problem. *Id.* Ms. Daigle stated that there was a problem, but she did not elaborate. *Id.*

11. Ms. Daigle had heightened sensitivity to security in the payroll department because an audit reviewed by Ms. Daigle earlier in the year indicated that non-payroll personnel should not have their offices located in the payroll department for security reasons. Hoch Aff. (MCAD), Ex. C pp. 19-20.

12. Ms. Daigle reported this incident to her supervisor Gail Titus, Director of Internal Audit. Plaintiff felt physically ill after this confrontation and left work for the day. Hoch Aff. (MCAD) Ex. A pp. 85, 91.

13. Massport's Human Resources Department was asked to investigate the allegation that Plaintiff had improperly accessed Anita Jansky's office and reviewed confidential payroll materials. Massport was concerned about Plaintiff's behavior because Anita Jansky's office contained confidential payroll records that included home addresses, phone numbers, wage and salary information, garnishment information, withholdings, social security numbers, and bank account numbers. Hoch Aff. (MCAD) Ex. D pp. 31-32; Ex. C p. 20.

14. Between October 16, 2001 and October 19, 2001, Human Resources Manager Tonda Lumley conducted interviews of Phyllis Daigle; Payroll Manager May Lee, Payroll Supervisor Anita Jansky, Manager of Support Services Anne Fortier, and Assistant Manager of Support Services Enda Thornton. Hoch Aff. (MCAD) Ex. F pp. 33-36.

15. In the course of her investigation, Ms. Lumley learned that, while Support Services had given Plaintiff a key to Ms. Jansky's office in June of 2000 so that he could print from her printer, neither Ms. Jansky nor her supervisor Ms. Lee were aware that Plaintiff had a key to Ms. Jansky's office in October of 2001. Hoch Aff. (MCAD) Ex. E p. 61, 93; Ex. D p. 9.

16. Ms. Jansky stated that she had never given Plaintiff authorization to access her office when it was locked. Hoch Aff. (MCAD) Ex. F p. 24.

17. As part of the investigation, Ms. Lumley attempted to contact Plaintiff to learn from him why he had a key to Ms. Jansky's office and why he was in her office on October 16, 2001. *Id.* at pp. 35, 162, 182, 185.

18. Despite having immediately engaged an attorney to represent his interests, Plaintiff and his attorney refused to participate in the investigation. *Id.* at F p. 183.

19 While Plaintiff claimed he could not speak with Ms. Lumley, he was able to leave voice mail messages for Mary Ann Bradley seeking to discuss the incident and spoke to Human Resources to obtain paperwork to request a medical leave. Hoch Aff. (USDC) Ex. A, p. 52-55; Hoch Aff. (MCAD) Ex. F p. 35.

20. Massport placed Plaintiff on paid leave during the investigation. Hoch Aff. (MCAD) Ex. F p. 185.

21. Massport requested that Plaintiff contact Ms. Lumley to discuss the investigation by October 22 and extended the deadline to October 30 when he failed to make contact. *Id.* at pp. 182, 185.

22. Plaintiff was informed that Massport would have no choice but to make a final determination as to the allegations without his input if he refused to contact Ms. Lumley. *Id.*

23. Massport waited an additional thirty days before concluding its investigation.

24.     On November 30, 2001, based upon the results of the investigation, Plaintiff was terminated for gaining access to Anita Jansky's locked office without her permission and reviewing and copying confidential documents from her desk. Hoch Aff. (MCAD) Ex. E pp. 94-96; Ex. F p. 161.

25.     Plaintiff received a post-termination hearing. Massport delayed the hearing until after January 1, 2002, to accommodate Plaintiff's schedule. Hoch Aff. (MCAD) Ex A p. 121.

26.     Plaintiff attended the hearing with an attorney but, on the advice of his lawyer, again refused to answer any questions. *Id.* at pp. 103-104, 125-126; Ex. B pp. 20-21, 24-25. Plaintiff merely read a statement and asked questions of Massport. Hoch Aff. (MCAD) Ex. F pp. 134-135. While Plaintiff summarily denied the allegations brought against him, he offered no defense of or explanation for his actions. *Id.*

27.     After the hearing, Kathleen Conlin, at the time Massport's Director of Human Resources, issued a report and found that

> the information before her substantiated the charge that Plaintiff entered Ms. Jansky's locked office without her permission and reviewed and photocopied documents from her desk without authorization to do so. As a result, I find that the facts are sufficient to support the stated reasons for the termination for cause of Plaintiff's at-will employment.

*Id.*

28.     As part of the investigation of Plaintiff's actions, the decision to terminate Plaintiff, and the post-termination hearing, Kathleen Conlin, Director of Human Resources, consulted with Massport's Senior Employment Counsel. Bowen Aff. ¶ 3.

29.     Counsel reviewed and advised on issues related to the FMLA and whether Plaintiff's being on protected leave affected Massport's ability to terminate him for misconduct. *Id.* at ¶ 5.

30. Because Massport's decision to terminate Plaintiff was based solely upon the evidence presented by its investigation and because Massport conducted its investigation and came to its conclusion in the same manner as it would have for any employee not on leave, but with similar circumstances, Ms. Bowen believed that Massport's actions were consistent with the FMLA. *Id.* at ¶ 6.

31. At that time, Massport regularly had employees taking medical leave and family leave under the FMLA. Massport denies having any animus against employees who exercise their rights under the FMLA. *Id.* at ¶ 7.

### III.  Fact Pertaining To Plaintiff's FMLA Claim.

32. Plaintiff went home sick on October 16, 2001. Hoch Aff. (MCAD) Ex. A pp. 85, 91.

33. Plaintiff alleges that the events of October 16, 2001, made him too ill to return to work or participate in Massport's investigation. *Id.*

34. Immediately after October 16, 2001, Plaintiff's doctors instructed him that he should not return to work at Massport. Hoch Aff. (USDC) Ex. A, p. 80.

35. Plaintiff's lawyer instructed him not to participate Massport's investigation and Plaintiff did not recall his doctors barring him from participating in Massport's investigation. *Id.* at pp. 80-81.

36. Plaintiff requested, and Massport immediately granted him, leave under the FMLA *Id.* at Ex. A, p. 114.

37. Plaintiff's FMLA claim involves interference with his right to take leave and return to his position; he is not alleging that Massport fired him in retaliation for taking leave. *Id.* at Ex. A, p. 116.

38.     Plaintiff has no evidence of anti-FMLA animus at Massport and has never heard anyone complain about or criticize people taking leave under the FMLA. *Id.* at p. 114. When asked, Plaintiff could not provide any evidence that Massport had a practice of ignoring the FMLA or that Massport had any bias against people taking leave under the FMLA. *Id.* at pp. 114-115.

39.     Plaintiff admitted that his condition has never improved and he has never gained the ability to return to work at Massport. *Id.* at p. 110, 112. Plaintiff does not believe he will ever be able to return to work. *Id.* at p. 137.

40.     As a result of his condition, Plaintiff applied for and was granted two years of benefits under his long-term disability policy. *Id.* at p. 110; Ex. B, Pione Depo. Ex. 9.

**IV.     Facts Pertaining To Plaintiff's Defamation Claim.**

41.     While Plaintiff could not identify specific defamatory statements made against him, he did not believe that any defamatory statements were made after his post-termination hearing. Hoch Aff. (USDC) Ex. A,. p. 38.

42.     Plaintiff stated that he believed defamatory statements were made as a part of the investigation into his behavior on October 16, 2001. *Id.* at pp. 39-41. Plaintiff has, however, no evidence that defamatory statements were published beyond the needs of Massport's investigation. *Id.* at pp. 32, 35-36, 43.

43.     When questioned specifically about who defamed him, Plaintiff identified Massport, Phyllis Daigle, Tonda Lumley, Kathleen Conlin, and "whomever else was involved in H.R." *Id.* at pp. 25, 37-38.

44.     Plaintiff alleged that Tonda Lumley, the investigator, made false statements to him but, when pressed, could not identify any false statements. *Id.* at pp. 26-30. Plaintiff merely

stated that all Ms. Lumley's defamatory statements were contained in her investigation report. *Id.*

45. Plaintiff stated that Phyllis Daigle's defamatory statements were her witness statements made during the course of Massport's investigation and related to her observations of Plaintiff's conduct. *Id.* at pp. 31-32.

44. Plaintiff believes that Ms. Lumley's and Ms. Daigle's statements regarding him were made solely to people involved in Massport's investigation. *Id.* at p. 35. Plaintiff has no evidence that either Ms. Lumley or Ms. Daigle spread information about him inside or outside of Massport. *Id.* at pp. 28-29, 35-36.

45. Plaintiff stated that Kathleen Conlin's defamatory statements, if any existed, were made in her report on the post-termination hearing. *Id.* at p. 37.

## V.    Facts Pertaining To Plaintiff's Breach of Contract Claim.

46. When asked if he had a contract with Massport, Plaintiff stated, "I'm not aware – again, I'm not versed in legalese." *Id.* at pp. 117-118. When asked, "So you have no idea whether you have a contract at Massport or not," he answered, "I'm not. And I don't know what constitutes a contract legally." *Id.* p. 118.

47. Plaintiff was a level 6 employee at Massport. *Id.* p. 132. As such, he was considered an ESPM employee, employed at-will. Hoch Aff. (USDC) Ex. B, Pione Depo. Ex. 8, § II(C), p. 163.

48. The Policy specifically states that ESPM employees "may be terminated at any time for any reason, with or without notice." *Id.* at § VI(B), p. 172.

49. Massport's' Policy also indicates that ESPM employees will not be eligible for severance if certain conditions are met. *Id.* at § VII. In Plaintiff's circumstance, he was not

entitled to severance since he experienced a disciplinary termination and he was given all the protections identified in § VII, the Severance Policy.  *Id.*

      50.      Massport's Severance Policy discussed the concept of progressive discipline, but it clearly stated that "serious disciplinary sanctions up to and including termination, may be imposed in lieu of any step in the progressive discipline process."  *Id.* at § VII(A), p. 172. Further, the Severance Policy specifically identified behaviors that would lead to immediate termination with no progressive discipline and payment of severance, including abusive behavior, harassment, dishonesty, and workplace substance abuse.  *See id.* § VII(A)(2), p. 173.

      51.      In order to deny severance to an ESPM employee terminated for misconduct, the Severance Policy states that the employee

> typically will receive reasonable notice that (1) provides an explanation of why discipline is being contemplated; (2) explains the possible disciplinary action that may be taken; and (3) provides a reasonable amount of time for the ESPM employee to prepare to respond.  The ESPM employee generally will thereafter have an opportunity to meet with his or her Department Head (or the Department Head's designee) and the Director of Human Resources to discuss the action being contemplated.  Under appropriate circumstances, immediate suspension without pay, demotion or termination may be required; provided, the notice and opportunity to be heard discussed above generally will be provided subsequently in due course."

*Id.* § VII(A)(3), p. 173.

      52.      Plaintiff stated he believed he was entitled to a post-termination hearing, but admitted he was given such a hearing.  Hoch Aff. (USDC) Ex. A, pp. 122, 146.

      53.      While Plaintiff believed he was entitled to a "full and fair investigation," he could not identify any basis for his belief.  *Id.* at pp. 123-124.  He merely stated that he believed a "full and fair hearing" was the "normal thing to happen between human beings."  *Id.* at p. 123.

      54.      Plaintiff met with the Director of Human Resources and his Department Head's designee during his post-termination hearing.  *Id.* pp. 146-147, 149.

55. Plaintiff was given paid leave while Massport investigated his conduct, was given a termination notice that outlined why he was terminated, and was given time to prepare for his hearing. *Id.* at pp. 147-149, 152-153.

56. Plaintiff could only state that he did not think he was treated fairly by Massport because no one believed his explanation for his behavior. *Id.* at pp. 126-130.

## REQUEST FOR ORAL ARGUMENT

The Authority respectfully requests that the Court grant the parties a hearing on this motion.

## RULE 7.1(A)(2) CERTIFICATION

Counsel for the Massachusetts Port Authority certifies that he has, in good faith, discussed the issues raised in this Motion for Summary Judgment with opposing counsel and the parties have been unable to narrow the issues set forth herein.

Respectfully submitted,

**MASSACHUSETTS PORT AUTHORITY**,

By its attorney,

/s/    William V. Hoch
_____

William V. Hoch, Esq.
BBO #564465
Senior Employment Counsel
Massachusetts Port Authority
One Harborside Drive - Legal
East Boston, Massachusetts   02128
(617) 568-3142

Dated:  June 9, 2006

CERTIFICATE OF SERVICE

      I hereby certify that this document has been filed through the ECF system and I understand that it will be sent electronically by the ECF system to the registered participants as identified on the Notice of Electronic Filing (NEF) and I will ensure that paper copies are sent to those indicated as non-registered participants on June 9, 2006.

            /s/    William V. Hoch
            _____
            William V. Hoch