UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LARRY PIONE,                              )
                                         )
        Plaintiff,                       )
                                         )
        v.                               )            C.A. No. 04-12177-MLW
                                         )
THE MASSACHUSETTS PORT                   )
AUTHORTY,                                )
                                         )
        Defendant.                       )
                                         )

**DEFENDANT'S MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

William V. Hoch, Esq.
BBO #564465
Senior Employment Counsel
Massachusetts Port Authority
One Harborside Drive - Legal
East Boston, Massachusetts   02128
(617) 568-3142

June 9, 2006

## SUMMARY OF ARGUMENT

Now comes Defendant Massachusetts Port Authority ("Massport" or the "Authority") and submits this Memorandum of Law in support of its Motion for Summary Judgment. Plaintiff Larry Pione's First Amended Complaint contains six counts: interference with his exercise of rights under the Family and Medical Leave Act ("FMLA"), wrongful termination, breach of contract, defamation, intentional infliction of emotional distress, and negligent infliction of emotional distress. In ruling on Massport's Motion to Dismiss, the Court dismissed the wrongful termination claim. After Plaintiff's deposition, Plaintiff agreed to withdraw his claims for intentional infliction of emotional distress and negligent infliction of emotional distress.[1] The remaining three claims are addressed in this Motion For Summary Judgment.

Plaintiff's FMLA interference claim must be dismissed as time barred. Plaintiff waited longer than two years to file his claim and cannot demonstrate that Massport willfully violated the FMLA. Even if Plaintiff's claim was timely filed, Massport had no obligation to reinstate him because he was not medically able to return to his position after twelve weeks. Finally, Plaintiff cannot demonstrate that Massport illegally interfered with his rights under the FMLA.

Plaintiff's defamation claim must be dismissed because Massport's statements are protected as part of an employer's privilege to evaluate employees. In addition, dismissal is warranted because there are no facts to demonstrate that Massport was negligent in making any statements about him.

---

[1] Plaintiff's counsel has represented to Massport that Plaintiff will withdraw his claims for intentional and negligent infliction of emotional distress. Because of this agreement, Massport is not presenting the evidence that clearly demonstrates how all of Plaintiff's emotional damages arose from his employment. Because of this, his emotional distress claims are barred by the exclusivity provisions of the Workers' Compensation Act, G. L. c. 152, sec. 15 and 24. *See Green v. Wyman-Gordon Co.*, 422 Mass. 551, 558-559 (1996); *Doe v. Purity Supreme, Inc.*, 422 Mass. 563, 566 (1996); *accord Hinchey v. NYNEX, Corp.*, 144 F.3d 134, 146 n. 7 (1St Cir. 1998); *Clarke v. Kentucky Fried Chicken of California, Inc.* 57 F.3d 21, 28-29 (1st Cir. 1995). To the extent that Plaintiff fails to withdraw these claims, Massport reserves the right to file a Motion for Summary Judgment on the two emotional distress claims.

1

Finally, Plaintiff's breach of contract claim must be dismissed because Massport's Policy on Employment Terms and Conditions ("Policy") did not create a contract with Plaintiff. Moreover, even if a contract did exist, Massport fulfilled the terms of the contract.

## STATEMENT OF FACTS[2]

### I.     History of plaintiff's legal proceedings.

As a result of an investigation into allegations that Plaintiff entered a payroll office without permission and reviewed and copied payroll records, Massport terminated Plaintiff on November 30, 2001.  Hoch Aff. (MCAD) Ex. F, pp. 33-36, 134-135, 161.  This termination was upheld after a post-termination hearing.  *Id.* at pp. 134-135.  Plaintiff filed an action with the Division of Industrial Accidents alleging he suffered emotional distress as a result of Massport's actions and received a $15,000.00 settlement of his worker's compensation claims.  Hoch Aff. (USDC), Ex. B, Pione Depo. Exs. 5 & 6.  Plaintiff then filed an action with the Massachusetts Commission Against Discrimination alleging age discrimination, which the Commission dismissed after reviewing the facts.  Hoch Aff. (USDC) Ex C.  Finally, Plaintiff filed this action alleging statutory and common law violations related to his employment.

### II.     Facts Pertaining To Plaintiff's Employment With Massport.

Massport engaged Plaintiff as a consultant in 1995 and hired him as a Special Financial Project Manager in 1997.  Hoch Aff. (MCAD) Ex. A, pp. 11, 14-15.  The position of Special Financial Project Manager was created for Plaintiff and, under Massport's classification scheme, was a level 6 position.  *Id.* at pp. 11, 22; Hoch Aff. (USDC) Ex. A, p. 132.  At the time Massport

---

[2] The undisputed facts in this case are set forth in documents attached to three affidavits attached to Massport's Motion for Summary Judgment.  There are two affidavits signed by William Hoch.  One was filed in the related Massachusetts Commission Against Discrimination action and will be referenced as Hoch Aff. (MCAD).  The other is filed in support of this Motion for Summary Judgment and will be referred to as Hoch Aff. (USDC).  Finally, there is an Affidavit from Marie H. Bowen, which will be referred to as Bowen Affidavit.  The two Hoch affidavits

engaged Plaintiff as a consultant and hired him as an employee, Massport's Chief Financial

Officer was Plaintiff's cousin.  Hoch Aff. (MCAD) Ex A, pp. 14-15.  Plaintiff held an associate's

degree in hospitality, had taken some basic accounting classes, and had learned accounting

through various jobs.  *Id.* at pp. 8-9.  After Massport terminated Plaintiff in 2001, it did not fill

his position.  *Id.* at. p. 141; Ex. D p. 20.

### III.    The October 16, 2001 Incident, Investigation, and Plaintiff's Termination

On October 16, 2001, at approximately 6:50 a.m., Massport Internal Audit Manager

Phyllis Daigle was walking to her office and observed Plaintiff using a key to enter Payroll

Supervisor Anita Jansky's locked office.[3]  Hoch Aff. (MCAD) Ex C pp. 14, 18.  Ms. Daigle then

clearly saw Plaintiff stand behind Ms. Jansky's desk and examine papers on her desk.  *Id.* at pp.

15-16, 17-18, 39-40.  Moments later, Ms. Daigle was walking from her office to the kitchen and

saw Plaintiff at the Payroll Department copy machine.  *Id.* at p. 14.  On her way from the kitchen

to her office, she again saw Plaintiff and he was coming out of Ms. Jansky's office carrying

papers.  *Id.* at C p. 19.  At this point, Ms. Daigle asked Plaintiff what he was doing.  *Id.*  He said

he was getting documents from the printer and asked if there was a problem.  *Id.*  Ms. Daigle

stated that there was a problem, but she did not elaborate.[4]  *Id.*  Ms. Daigle reported this incident

to her supervisor Gail Titus, Director of Internal Audit.  Plaintiff felt physically ill after this

confrontation and left work for the day.  Hoch Aff. (MCAD) Ex. A pp. 85, 91.

Massport's Human Resources Department was asked to investigate the allegation that

Plaintiff had improperly accessed Anita Jansky's office and reviewed confidential payroll

---

attach exhibits that include deposition testimony and deposition exhibits and reference will be made to specific
exhibits and pages so that the Court can more easily review the cited testimony.
[3] Ms. Jansky testified that she kept her office locked at night.  Hoch Aff. (MCAD), Ex. D p. 15.

materials.  Massport was concerned about Plaintiff's behavior because Anita Jansky's office

contained confidential payroll records that included home addresses, phone numbers, wage and

salary information, garnishment information, withholdings, social security numbers, and bank

account numbers.  Hoch Aff. (MCAD) Ex. D pp. 31-32; Ex. C p. 20.  Between October 16, 2001

and October 19, 2001, Human Resources Manager Tonda Lumley conducted interviews of

Phyllis Daigle; Payroll Manager May Lee, Payroll Supervisor Anita Jansky, Manager of Support

Services Anne Fortier, and Assistant Manager of Support Services Enda Thornton.  Hoch Aff.

(MCAD) Ex. F pp. 33-36.

In the course of her investigation, Ms. Lumley learned that, while Support Services had

given Plaintiff a key to Ms. Jansky's office in June of 2000 so that he could print from her

printer, neither Ms. Jansky nor her supervisor Ms. Lee were aware that Plaintiff had a key to Ms.

Jansky's office in October of 2001.  Hoch Aff. (MCAD) Ex. E p. 61, 93; Ex. D p. 9.  Further,

Ms. Jansky stated that she had never given Plaintiff authorization to access her office when it

was locked.  Hoch Aff. (MCAD) Ex. F p. 24.

As part of the investigation, Ms. Lumley attempted to contact Plaintiff to learn from him

why he had a key to Ms. Jansky's office and why he was in her office on October 16, 2001.  *Id.*

at pp. 35, 162, 182, 185.  Despite having immediately engaged an attorney to represent his

interests, Plaintiff and his attorney refused to participate in the investigation.  *Id.* at F p. 183.

While Plaintiff claimed he could not speak with Ms. Lumley, he was able to leave voice mail

messages for Mary Ann Bradley seeking to discuss the incident and spoke to Human Resources

---

[4] Ms. Daigle had heightened sensitivity to security in the payroll department because an audit reviewed by Ms.
Daigle earlier in the year indicated that non-payroll personnel should not have their offices located in the payroll
department for security reasons.  Hoch Aff. (MCAD), Ex. C pp. 19-20.

to obtain paperwork to request a medical leave.  Hoch Aff. (USDC) Ex. A, p. 52-55; Hoch Aff. (MCAD) Ex. F p. 35.

Massport placed Plaintiff on paid leave during the investigation.  Hoch Aff. (MCAD) Ex. F p. 185.  Massport requested that Plaintiff contact Ms. Lumley to discuss the investigation by October 22 and extended the deadline to October 30 when he failed to make contact.  *Id.* at pp. 182, 185.  Plaintiff was informed that Massport would have no choice but to make a final determination as to the allegations without his input if he refused to contact Ms. Lumley.  *Id.* Massport waited an additional thirty days before concluding its investigation.  On November 30, 2001, based upon the results of the investigation, Plaintiff was terminated for gaining access to Anita Jansky's locked office without her permission and reviewing and copying confidential documents from her desk.  Hoch Aff. (MCAD) Ex. E pp. 94-96; Ex. F p. 161.

Plaintiff received a post-termination hearing.  Massport delayed the hearing until after January 1, 2002, to accommodate Plaintiff's schedule.  Hoch Aff. (MCAD) Ex A p. 121. Plaintiff attended the hearing with an attorney but, on the advice of his lawyer, again refused to answer any questions.  *Id.* at pp. 103-104, 125-126; Ex. B pp. 20-21, 24-25.  Plaintiff merely read a statement and asked questions of Massport.  Hoch Aff. (MCAD) Ex. F pp. 134-135. While Plaintiff summarily denied the allegations brought against him, he offered no defense of or explanation for his actions.  *Id.*  After the hearing, Kathleen Conlin, at the time Massport's Director of Human Resources, issued a report and found that

> the information before her substantiated the charge that Plaintiff entered Ms. Jansky's locked office without her permission and reviewed and photocopied documents from her desk without authorization to do so.  As a result, I find that the facts are sufficient to support the stated reasons for the termination for cause of Plaintiff's at-will employment.

*Id.*

5

As part of the investigation of Plaintiff's actions, the decision to terminate Plaintiff, and the post-termination hearing, Kathleen Conlin, Director of Human Resources, consulted with Massport's Senior Employment Counsel. Bowen Aff. ¶ 3. Counsel reviewed and advised on issues related to the FMLA and whether Plaintiff's being on protected leave affected Massport's ability to terminate him for misconduct. *Id.* at ¶ 5. Because Massport's decision to terminate Plaintiff was based solely upon the evidence presented by its investigation and because Massport conducted its investigation and came to its conclusion in the same manner as it would have for any employee not on leave, but with similar circumstances, Ms. Bowen believed that Massport's actions were consistent with the FMLA. *Id.* at ¶ 6. At that time, Massport regularly had employees taking medical leave and family leave under the FMLA. Massport denies having any animus against employees who exercise their rights under the FMLA. *Id.* at ¶ 7.

### IV.    Fact Pertaining To Plaintiff's FMLA Claim.

Plaintiff went home sick on October 16, 2001. Hoch Aff. (MCAD) Ex. A pp. 85, 91. Plaintiff alleges that the events of October 16, 2001, made him too ill to return to work or participate in Massport's investigation. *Id.* Immediately after October 16, 2001, Plaintiff's doctors instructed him that he should not return to work at Massport. Hoch Aff. (USDC) Ex. A, p. 80. While Plaintiff's lawyer instructed him not to participate Massport's investigation, Plaintiff did not recall his doctors barring him from participating in Massport's investigation. *Id.* at pp. 80-81. Plaintiff requested, and Massport immediately granted him, leave under the FMLA *Id.* at Ex. A, p. 114.

Plaintiff's FMLA claim involves interference with his right to take leave and return to his position; he is not alleging that Massport fired him in retaliation for taking leave. *Id.* at Ex. A, p. 116. Plaintiff has no evidence of anti-FMLA animus at Massport and has never heard anyone

6

complain about or criticize people taking leave under the FMLA.  *Id.* at p. 114.  When asked,

Plaintiff could not provide any evidence that Massport had a practice of ignoring the FMLA or

that Massport had any bias against people taking leave under the FMLA.  *Id.* at pp. 114-115.

Plaintiff admitted that his condition has never improved and he has never gained the

ability to return to work at Massport.  *Id.* at p. 110, 112.  Plaintiff does not believe he will ever be

able to return to work.  *Id.* at p. 137.  As a result of his condition, Plaintiff applied for and was

granted two years of benefits under his long-term disability policy.  *Id.* at p. 110; Ex. B, Pione

Depo. Ex. 9.

V.    **Facts Pertaining To Plaintiff's Defamation Claim**.

Plaintiff's defamation claim is based solely upon the limited statements made in the

course of, and as a result of, Massport's investigation into his conduct.  While Plaintiff could not

identify specific defamatory statements made against him, he did not believe that any defamatory

statements were made after his post-termination hearing.  Hoch Aff. (USDC) Ex. A,. p. 38.

Plaintiff stated that he believed defamatory statements were made as a part of the investigation

into his behavior on October 16, 2001.  *Id.* at pp. 39-41.  Plaintiff has, however, no evidence that

defamatory statements were published beyond the needs of Massport's investigation.  *Id.* at pp.

32, 35-36, 43.

When questioned specifically about who defamed him, Plaintiff identified Massport,

Phyllis Daigle, Tonda Lumley, Kathleen Conlin, and "whomever else was involved in H.R."  *Id.*

at pp. 25, 37-38.  Plaintiff alleged that Tonda Lumley, the investigator, made false statements to

him but, when pressed, could not identify any false statements.  *Id.* at pp. 26-30.  Plaintiff merely

stated that all Ms. Lumley's defamatory statements were contained in her investigation report.

*Id.*  Plaintiff stated that Phyllis Daigle's defamatory statements were her witness statements made

during the course of Massport's investigation and related to her observations of Plaintiff's

conduct.  *Id.* at pp. 31-32.  Plaintiff believes that Ms. Lumley's and Ms. Daigle's statements

regarding him were made solely to people involved in Massport's investigation.  *Id.* at p. 35.[5]

Plaintiff has no evidence that either Ms. Lumley or Ms. Daigle spread information about him

inside or outside of Massport.  *Id.* at pp. 28-29, 35-36.  Finally, Plaintiff stated that Kathleen

Conlin's defamatory statements, if any existed, were made in her report on the post-termination

hearing.  *Id.* at p. 37.

## VI.    Facts Pertaining To Plaintiff's Breach of Contract Claim.

While employed by Massport, Plaintiff had no belief or understanding that he had a

contract with Massport. When asked if he had a contract with Massport, Plaintiff stated, "I'm not

aware – again, I'm not versed in legalese." *Id.* at pp. 117-118.  When asked, "So you have no

idea whether you have a contract at Massport or not," he answered, "I'm not.  And I don't know

what constitutes a contract legally." *Id.* p. 118.

Plaintiff was a level 6 employee at Massport. *Id.* p. 132.  As such, he was considered an

ESPM employee, employed at-will.  Hoch Aff. (USDC) Ex. B, Pione Depo. Ex. 8, § II(C), p.

163.  The Policy specifically states that ESPM employees "may be terminated at any time for

any reason, with or without notice." *Id.* at § VI(B), p. 172.

Massport's' Policy also indicates that ESPM employees will not be eligible for severance

if certain conditions are met. *Id.* at § VII.  In Plaintiff's circumstance, he was not entitled to

severance since he experienced a disciplinary termination and he was given all the protections

identified in § VII, the Severance Policy.  *Id.*  While Massport's Severance Policy discussed the

---

[5] "Q.  So as far as you're aware, both Tonda and Phyllis kept their conversations about you to the small circle of people who were involved in the investigation?
    A.   I would venture to gain that that would be the situation."  Hoch Aff. (USDC) Ex. A, p. 35.

concept of progressive discipline, it clearly stated that "serious disciplinary sanctions up to and including termination, may be imposed in lieu of any step in the progressive discipline process." *Id.* at § VII(A), p. 172.  Further, the Severance Policy specifically identified behaviors that would lead to immediate termination with no progressive discipline and payment of severance, including abusive behavior, harassment, dishonesty, and workplace substance abuse.  *See id.* § VII(A)(2), p. 173.  Finally, in order to deny severance to an ESPM employee terminated for misconduct, the Severance Policy states that the employee

> typically will receive reasonable notice that (1) provides an explanation of why discipline is being contemplated; (2) explains the possible disciplinary action that may be taken; and (3) provides a reasonable amount of time for the ESPM employee to prepare to respond.  The ESPM employee generally will thereafter have an opportunity to meet with his or her Department Head (or the Department Head's designee) and the Director of Human Resources to discuss the action being contemplated.  Under appropriate circumstances, immediate suspension without pay, demotion or termination may be required; provided, the notice and opportunity to be heard discussed above generally will be provided subsequently in due course."

*Id.* § VII(A)(3), p. 173.

Plaintiff stated he believed he was entitled to a post-termination hearing, but admitted he was given such a hearing.  Hoch Aff. (USDC) Ex. A, pp. 122, 146.  While Plaintiff believed he was entitled to a "full and fair investigation," he could not identify any basis for his belief.  *Id.* at pp. 123-124.  He merely stated that he believed a "full and fair hearing" was the "normal thing to happen between human beings."  *Id.* at p. 123.  Plaintiff stated that he had the right to meet with his Department head and the Director of Human Resources, but admits that he met with the Director of Human Resources and his Department Head's designee during his post-termination hearing.  *Id.* pp. 146-147, 149.  In addition, Plaintiff admitted that he was given paid leave while Massport investigated his conduct, a termination notice that outlined why he was terminated, and time to prepare for his hearing.  *Id.* at pp. 147-149, 152-153.  Ultimately, Plaintiff could only

9

state that he did not think he was treated fairly by Massport because no one believed his explanation for his behavior.  *Id.* at pp. 126-130.

<u>**ARGUMENT**</u>

I.    **THERE ARE NO DISPUTED FACTUAL ISSUES SURROUNDING PLAINTIFF'S FMLA CLAIMS AND THOSE CLAIMS MUST BE DISMISSED AS A MATTER OF LAW.**

    A.  <u>**Plaintiff's FMLA Claim Is Time Barred.**</u>

FMLA actions are subject to a two-year statute of limitations unless a plaintiff can prove a willful violation of the FMLA, in which case the statute establishes a three year limitation period.  See 29 U.S.C. § 2617(c)(1) & (2).  Because plaintiff was terminated on November 30, 2001, the general limitations period for filing a claim under the FMLA ended on November 30, 2003.  Plaintiff did not file his FMLA claim until October 15, 2004.  This alone is fatal to Plaintiff's FMLA claim because there is a dearth of evidence to support any assertion of willfulness on behalf of Massport.  If, however, plaintiff can prove that Massport willfully violated the FMLA, the statute of limitations would extend to November 30, 2004.

The First Circuit has held that to qualify for the three-year statute of limitations period, "a plaintiff must show that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  *Hillstrom v. Best Western TLC Hotel*, 354 F.3d 27, 33 (1st Cir. 2003) (internal quotation marks omitted).  The First Circuit went on to quote *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) saying:

> If an employer acts reasonably in determining its legal obligation, its actions cannot be deemed willful . . ..  If an employer acts unreasonably, but not recklessly, in determining its legal obligation, then . . . it should not be . . . considered [willful].

*Hillstrom*, 354 F.3d at 33.

Stated differently, in order to prove a willful violation of the FMLA, "Plaintiff must proffer evidence that (1) the defendant employer had actual knowledge of, or showed reckless disregard for, the requirements of the FMLA, and (2) intentionally disobeyed or ignored the law." *Degan v. Goldwell of New England, Inc.*, 2006 U.S. Dist. Lexis 4349 * 6 (*quoting Lukacinsky v. Panasonic Serv. Co.*, 2004 U.S. Dist. LEXIS 25846, No. 03-40141, 2004 WL 2915347, at * 6 (D. Mass. 2004)).

As further elaborated by the Court in *Lukacinsky*,

An employer's actions cannot be deemed willful simply for knowing that FMLA was in the picture, or that it was potentially applicable, when it committed the challenged act. Likewise, if an employer acts reasonably in determining its legal obligation or acts unreasonably, but not recklessly, its action should not be considered willful.

Although discrimination by its nature is intentional conduct, not every finding of liability under the FMLA necessarily results in a finding of willful violation. To hold otherwise would virtually obliterate any distinction between willful and non-willful violations of the FMLA, when Congress plainly intended to construct a two-tier statute of limitations and to draw a significant distinction between ordinary and willful violations.

2004 U.S. Dist. LEXIS 25846 at * 21 (internal citations and quotation marks omitted).

While Massport was aware that it had granted Plaintiff FMLA protected medical leave approximately 6 weeks prior to his termination, Plaintiff has no evidence that Massport intentionally disobeyed or ignored the law. To the contrary, Massport's then Senior Employment Counsel specifically advised Human Resources regarding the interaction between the FMLA and Plaintiff's termination. *See* Bowen Aff. ¶¶ 4-6. After consideration of these issues, Massport determined that Plaintiff's being on FMLA did not bar Massport from terminating him as long as Massport was treating Plaintiff the same as it would have treated an employee not on FMLA. Given Massport's reasoned analysis prior to terminating Plaintiff, the

Court cannot find that Massport acted recklessly or showed reckless disregard for whether its conduct was prohibited by the FMLA.

**B.  Even if Plaintiff's Claim is Timely Filed, Because Plaintiff Has Been Continuously Unable To Perform The Duties Of His Job, He Had No Right To Reinstatement To His Former Employment And His Claim Must Be Dismissed.**

An employee has no right to reinstatement under the FMLA if the employee is unable to return to work.  See 29 C.F.R. § 214(b).  Plaintiff, by his own admission, would not have been able to return to work at Massport after twelve weeks of leave.  Hoch Aff. (USDC) Ex. A, p. 110.  In reviewing a case in which an employer terminated an employee on leave under the FMLA, the First Circuit Court of Appeals dismissed the employees FMLA interference claim because the employee "by his own admission, would not have been able to return to work until . . . well after the expiration of his FMLA leave."  *Colburn v. Parker Hannifin/Nichols Portland Division*, 429 F.3d 325, 332 (1st Cir. 2005).  The Court noted that "Department of Labor regulations interpreting the FMLA state that an employee has no right to reinstatement "if the employee is unable to perform the essential function of the position because of . . . the continuation of a serious health condition.""  *Id. quoting* 29 C.F.R. sec. 825.214(b).  Like Colburn, Plaintiff admitted that he, to this day, cannot return to work because of his health condition.  Because he admits that he could not have returned to work after 12 weeks of leave, Plaintiff's claim the Court must dismiss the claim that Massport interfered with his rights by not reinstating him.

**C.  Even If Plaintiff's Claim is Timely Filed, Massport's Investigation of Plaintiff's Conduct And Decision To Terminate Him Did Not Violate The FMLA.**

Plaintiff's suit argues, in essence, that Massport could not investigate allegations of his misbehavior, request information from him, or terminate him for misconduct while he was on

FMLA leave.  Plaintiff seems to be arguing that he had a right to be left alone by Massport during his FMLA leave.  An employee taking leave under the FMLA, however, has no greater rights to reinstatement or to any other benefit or condition of employment than if the employee had been continuously employed.  *See* 29 C.F.R. § 825.216(a).  The FMLA provides no right to be "left alone" while on leave.  *See Callison v. City of Philadelphia*, 430 F.3d 117, 120-121 (3rd Cir. 2005).

The FMLA does not require an employer to treat an employee on leave better than it treats other employees.  Therefore, Massport had the right to interview Plaintiff while he was on leave just as it would interview any employee about allegations of misconduct.  In addition, once Massport identified evidence that warranted termination, "the FMLA does not force an employer to retain an employee on FMLA leave when the employer would not have retained the employee had the employee not been on FMLA leave."  *Throneberry v. McGehee Desha County Hospital*, 403 F.3d 972, 977-978 (8th Cir. 2005) (holding that "the FMLA does not shield an employee on FMLA leave from . . . lawful discharge"); *Kohls v. Beverly Enterprises Wisconsin, Inc.*, 259 F.3d 799, 805 (7th Cir. 2001) (stating that an employee on FMLA may be terminated for poor performance if she would have been fired for such performance even absent her leave); *Sista v. CDC Ixis North America, Inc.*, 2005 U.S. Dist. LEXIS 2163, No. 02-3470, at * 23-25 (S.D. N.Y. 2004) (where employee misconduct occurs before the start of FMLA leave, investigation of and termination for misconduct does not violate FMLA).  Therefore, as long as Massport's reasons for terminating Plaintiff were unrelated to his exercise of FMLA rights, the termination will be lawfully justified and not in violation of the FMLA.  *See Throneberry,* 403 F.3d at 979.

Massport investigated allegations pertaining to Plaintiff's conduct on October 16, 2001.  Plaintiff refused to participate in the investigation on the advice of his lawyer.  *See* Hoch Aff.

(USDC) Ex. A, p. 80-81.  Accordingly, Massport's decision was based upon the unchallenged, credible testimony of Phyllis Daigle who had witnessed Plaintiff opening Anita Jansky's locked office door, riffling through confidential payroll records on her desk, and later copying what she believed to be those papers.  As a result of the investigation, Plaintiff was terminated for accessing a co-worker's office without the co-worker's permission, reviewing payroll records, and copying those records.  Massport provided Plaintiff with a post-termination hearing, but Plaintiff again refused to answer questions at the hearing.  *Id.* at p. 85-86.  Plaintiff was legitimately terminated based upon Massport's determination that his conduct on October 16, 2001, was unacceptable.

Plaintiff may argue that his medical condition prohibited him from participating in the investigation.  Plaintiff has produced no medical evidence indicating that he could not be interviewed by Massport.  Plaintiff's contemporaneous medical records indicate only that he could not return to work.  Hoch Aff. (USDC) Ex. B, Pione Depo. Exs. 7 & 12.  Plaintiff offered no evidence that he could not be interviewed at home, on the telephone, or through his lawyer.  When questioned on this point, Plaintiff admitted that it was his lawyer, and not his doctor, who instructed him not to participate in the investigation.  Hoch Aff. (USDC) Ex. A, pp. 80-81.  There is no evidence that Plaintiff's condition barred him, either directly or through his lawyer, from responding to Massport's investigation.[6]

---

[6] Interestingly, while Plaintiff claims he could not participate in the investigation, he was able to contact Massport to request leave and traveled to Florida while on leave.  Hoch Aff. (USDC) Ex. A, pp. 52-55, 66-67.

## II.   PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT.

### A.   Plaintiff Does Not Have a Contract With Massport.

Massport's Policy on Employment Terms and Conditions ("Policy") clearly sets forth that Plaintiff was an "at-will" employee. *See* Hoch Aff. (USDC) Ex. B, Pione Depo. Ex. 8, sec. VI(B), p. 172 (stating that "ESPM employees are 'at-will' employees of the Authority"). Because of this, Plaintiff had no contract with Massport and could be terminated "at any time for virtually any reason or even no reason at all." *See Choroszy v. Wentworth Instit. of Technology*, 915 F. Supp. 446, 451 (D. Mass. 1996). The policy also includes in Section IV(C) a "Management Discretion" clause stating that "nothing in this policy shall be construed to limit or alter the sole discretion of the Authority . . . to discipline, demote, transfer, suspend, terminate or take any other personnel action as to any employee for any reason deemed by management to be appropriate." Hoch Aff. (USDC) Ex. B, Pione Depo. Ex. 8, p. 166. Accordingly, the Policy cannot reasonably be construed as a contract between Plaintiff and Massport.

Plaintiff argues that the procedural requirements in Sec. VII (Severance: ESPM Employees) create a contract. These requirements, however, merely set forth a process by which Massport can terminate an employee for misconduct or incompetence and not pay the employee severance. Under Sec. VII of the Policy, if Massport chooses to follow certain termination related procedures and the decision to terminate is upheld, there will be no severance offered the employee. *See* Hoch Aff. (USDC) Ex. B, Pione Depo. Ex. 8, sec. VII pp. 172-173. The fact that the Policy provided a process by which Massport determines who is eligible for severance "does not change the at-will status of an employee." *Cf. Sklar v. Beth Israel Deconess Medical Center*, 59 Mass.App.Ct. 550, 560 (1993).

**B.    Even if a Contract Existed Between Plaintiff and Massport,**
**Massport Met the Terms of the Alleged Contract.**

While Massport disputes the existence of a contract, if the Policy created a contract,
Massport fulfilled its obligations.  The Policy clearly states that an ESPM employee can be
terminated for any reason.  There is no limitation or condition on Massport's ability to terminate
an ESPM employee.  *See* Hoch Aff. (USDC) Ex. B, Pione Depo. Ex. 8, sec. VI(B), p. 172.  In
addition, the Policy offers no post-termination provisions for ESPM employees.

The only procedural requirements in the policy relating to termination address when an
ESPM is eligible for severance.  Under the policy, if Massport follows the limited guidelines
under the Severance (Disciplinary Termination) section, Massport does not have to pay an
employee severance.  If the guidelines are not followed, Massport considers that the employee is
entitled to severance.  *See* Hoch Aff. (USDC) Ex. B, Pione Depo. Ex. 8, sec. VII(A), p. 172.
Even these guidelines, however, are flexible depending on the circumstances.  While they
discuss progressive discipline, the Policy also states in Section VII(A)(1) & (2) that "serious
disciplinary sanctions up to and including termination, may be imposed in lieu of any step in the
progressive discipline process" and the Policy specifically identified behaviors that would lead to
immediate termination, including abusive behavior, harassment, dishonesty, and workplace
substance abuse.  *Id.* at pp. 172-173.  Since the Plaintiff was terminated for improperly
accessing, reviewing, and copying payroll records, his behavior fits squarely into Massport's
prohibition on "dishonesty" and he could be dismissed and denied severance even though he had
no record of discipline.

The procedural heart of the Severance Policy states that ESPM employees who are
terminated for misbehavior will not receive severance as long as the employee

typically will receive reasonable notice that (1) provides an explanation of why discipline is being contemplated; (2) explains the possible disciplinary action that may be taken; and (3) provides a reasonable amount of time for the ESPM employee to prepare to respond. The ESPM employee generally will thereafter have an opportunity to meet with his or her Department Head (or the Department Head's designee) and the Director of Human Resources to discuss the action being contemplated. Under appropriate circumstances, immediate suspension without pay, demotion or termination may be required; provided, the notice and opportunity to be heard discussed above generally will be provided subsequently in due course.

Hoch Aff. (USDC) Ex. B, Pione Depo. Ex. 8, sec. VII(A)(3), p. 173. Thus, Plaintiff would only have been entitled to severance if Massport had failed to follow these guidelines. Plaintiff admits that he was provided all of this and more.

Plaintiff was immediately suspended for his action, but suspended with pay. Hoch Aff. (MCAD) Ex. F, p. 185. He was given notice of charges against him in the course of the investigation and when he was terminated. *Id.* at pp. 161, 185. He was offered multiple opportunities to answer questions about his behavior and was given a post-termination hearing at which the Director of Human Resources and his Department Head's designee were present. *Id.* at pp. 134-135, 161, 162, 182, 185. Finally, Plaintiff's hearing was rescheduled at his lawyer's request and was not held until January 28, 2002. Hoch Aff. (MCAD) Ex. A, p. 121, Ex. F, p. 134. Accordingly, Plaintiff had sufficient time to prepare for the hearing.

While Plaintiff alleges that Massport's Policy guarantees each employee full and fair "pre-termination investigations and full and fair hearings regarding termination," he could not identify the source of his belief that he was entitled to a full and fair investigation and hearing. Hoch Aff. (USDC) Ex. A, p. 123-124. Massport's Policy makes no mention of an employee's right to an investigation, although an investigation was conducted in this case. Hoch Aff. (USDC) Ex. B, Pione Depo. Ex. 8. Plaintiff also incorrectly alleges that Massport's policy provides him a right to a pre-termination hearing. First Amended Complaint ¶ 34. In fact, the

17

Severance Policy is clear that Massport has the option of conducting a hearing pre-termination, or where appropriate, post-termination prior to denying severance to a terminated employee. *See* Hoch Aff. (USDC) Ex. B, Pione Depo. Ex. 8, sec. VII(3), p. 173 (stating that, under appropriate circumstances, "immediate . . . termination may be required; provided the notice and opportunity to be heard discussed above generally will be provided subsequently in due course").

Ultimately, Plaintiff could only state that he did not think he was treated fairly by Massport because no one believed his explanation for his behavior. Hoch Aff. (USDC), Ex. A pp. 126-130. While Plaintiff was not satisfied with his termination and his post-termination hearing, there is no evidence that Massport failed to provide him all the procedures and protections outlined in the Policy. Therefore, if a contract existed between Plaintiff and Massport, Massport fulfilled its obligations to Plaintiff.

## V.  PLAINTIFF'S DEFAMATION CLAIM IS FATALLY FLAWED AND MUST BE DISMISSED.

### A.  <u>Massport's Statements Were Privileged And Massport Did Not Abuse The Privilege.</u>

Under Massachusetts law, an employer has a "conditional privilege to disclose defamatory information concerning an employee when the publication is reasonably necessary to serve the employer's interest in the fitness of an employee to perform his or her job." *McCone v. New England Tel. And Tel. Co.*, 393 Mass. 231, 235 (1984); *see also Bratt v. Int'l Business Mach. Corp.*, 392 Mass. 508, 512-513 (1984). Plaintiff testified that the statements he alleges are defamatory all related to Massport's investigation of his conduct. Hoch Aff. (USDC), Ex. A pp. 26-30, 39-41. When asked to identify the defamatory statements at issue, Plaintiff discussed Phyllis Daigle's witness statements made to her supervisors and Human Resources concerning Plaintiff's actions. *Id.* at pp. 31-32. In addition, the Plaintiff stated that Tonda Lumley's

18

investigation report and Kathy Conlin's post-termination hearing ruling were defamatory. *Id.* at pp. 26, 37. All of these statements fall squarely within Massport's conditional privilege to determine Plaintiff's fitness to continue in his position given the accusations against him on October 16, 2001. Massport had a need to investigate Plaintiff's alleged misconduct and that investigation, by definition, included witness statements, investigation reports, and personnel action reports.

Massport could only lose its conditional privilege if it abused the privilege by knowingly or recklessly providing false information or by excessive publication. *See McCone*, 393 Mass. at 235-236. Plaintiff, however, bears the burden of showing specific facts demonstrating that Massport abused the privilege. *See id.* at 236. There is no evidence that Massport knowing published false information about Plaintiff. Massport's reports were based upon a careful review of the facts at issue. In addition, there is no evidence of excessive publication because, even Plaintiff admits, that the allegedly defamatory statements were only publicized between people who were integral to the investigation. Hoch Aff. (USDC), Ex. A pp. 28-29, 35-36. Since Plaintiff does not believe that Massport and its employees were reckless in communicating the facts of his termination, he cannot overcome the privilege and his defamation claim must be dismissed. *See McCone*, 393 Mass. at 236.

**B. Plaintiff Has No Reasonable Expectation Of Proving Massport Acted Negligently, An Essential Element of A Defamation Claim.**

Plaintiff alleges two types of defamation against Massport: first, that an employee made false statements concerning his actions and, second, that Massport's written reports regarding its investigation and his subsequent termination were defamatory. To withstand a motion for summary judgment on his defamation claim, Plaintiff must show four things: (1) that Massport

made a statement about him to a third party; (2) that the statement could damage Plaintiff's reputation in the community; (3) that Massport was negligent in making the statement; and (4) that the statement caused Plaintiff economic loss.  *See Ravnikar v. Bogojavlensky*, 438 Mass. 627, 629-630 (2003).  At a minimum, Plaintiff cannot prove the negligence element of his prima facie case.

Under the negligence standard adopted by Massachusetts courts, "the defendants are required to act reasonably in checking on the truth or falsity . . . of the communication before publishing it."  *Jones v. Taibbi*, 400 Mass. 786, 799-800 (1987) (internal citation omitted).  The question to be answered is whether Massport "had or should have had reasonable doubt as to the truth of" the defamatory statements prior to publishing them.  *Id* at 800.  In this case, Massport conducted a thorough investigation concerning Plaintiff's conduct by, among other things, interviewing the only witness to Plaintiff's conduct and speaking with Anita Jansky, the employee whose office Plaintiff unlocked and entered.  In addition, Massport requested that Plaintiff provide information regarding the investigation and extended deadlines to allow Plaintiff to participate.  Massport only issued its decision after almost forty-five days had passed and Plaintiff had still refused to answer questions regarding his behavior.  During the post-termination hearing, Plaintiff was given another chance to answer questions, but he again refused.  Thus, even if Massport's conclusions were incorrect, there is no evidence that Massport acted unreasonably or had any reason to doubt the veracity of its findings.

## <u>CONCLUSION</u>

For the above stated reasons and the reasons set forth in its Motion for Summary

Judgment, the Authority requests that the Court dismiss Plaintiff's remaining claims.

Respectfully submitted,

**MASSACHUSETTS PORT AUTHORITY**,

By its attorney,

/s/    William V. Hoch
_____
William V. Hoch, Esq.
BBO #564465
Senior Employment Counsel
Massachusetts Port Authority
One Harborside Drive - Legal
East Boston, Massachusetts   02128
(617) 568-3142

Dated:  June 9, 2006

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document has been filed through the ECF system and I
understand that it will be sent electronically by the ECF system to the registered participants as
identified on the Notice of Electronic Filing (NEF) and I will ensure that paper copies are sent to
those indicated as non-registered participants on June 9, 2006.

/s/    William V. Hoch
_____
William V. Hoch